**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**MICHELLE KERIN**, OSB No. 965278
michelle@angelilaw.com
**AMY E. POTTER**, OSB No. 231794
amy@angelilaw.com
**AMANDA A. THIBEAULT**, OSB No. 132913
amanda@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*Attorneys for Defendant Samuel Troy Landis*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF OREGON<br><br>vs.<br><br>SAMUEL TROY LANDIS<br><br>Defendant. | **6:23-cr-00330-MC**<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS** |

      The State gets one thing right in its response to Agent Landis' Motion to Dismiss: this Court must decide whether Agent Landis' decision to proceed through a stop sign without coming to a complete stop during an important surveillance mission was objectively reasonable. But the State's continued insistence that Agent Landis' actions were unreasonable, because the

mission purportedly involved no "exigency," is belied by the facts and the law. Agent Landis reasonably believed that his actions were necessary to the performance of his duties during the surveillance mission. As a result, he is immune from the State's charges. This case must be dismissed.

## ARGUMENT

To keep up with the other members of his team and remain undetected during an active surveillance mission of a dangerous fentanyl dealer, Agent Landis concluded that he could safely travel through a stop sign without coming to a complete stop and that doing so was necessary to regain his position among the law enforcement vehicles conducting the surveillance. In light of what Agent Landis knew at that tense moment, informed by his extensive training and experience with clandestine surveillance missions, his decision was reasonable. He is entitled to immunity.

I.   **The State's "Urgency" and "Exigency" Arguments Are a Red Herring—Agent Landis Is Entitled to Immunity Because He Reasonably Believed That His Actions Were Necessary to Accomplish His Federal Duties.**

Agent Landis is entitled to immunity if he demonstrates that his actions were "necessary and proper." *Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir. 1977). This requires him to show that he subjectively believed his actions were "justified" and "reasonably necessary" to accomplish his duties, and that his belief was objectively reasonable. *Id.* (citation omitted); *see also New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004); *Kentucky v. Long*, 837 F.2d 727, 745 (6th Cir. 1988).

The State concedes that the Ninth Circuit has never required a federal agent to show that his actions were required by some "exigency." (State's Resp. at 6.) Nevertheless, relying on an out-of-circuit case, the State urges the Court to graft such a requirement onto the long-established *Clifton* standard. But even if this Court were to adopt such a requirement in the face of Ninth Circuit law that has never required it, the circumstances of the surveillance mission in this case presented the type of "exigency" that would satisfy that requirement.

The unifying theme in the cases is that it is not sufficient for a federal officer merely to establish that he was "on duty" in some general sense; rather, he must also demonstrate that he reasonably believed that his actions were necessary to accomplish some specific job-related function.[1] Consistent with that theme, the Ninth Circuit has been clear that for Agent Landis to

---

[1] *Compare Mesa v. California*, 489 U.S. 121 (1989) (Postal Service mail truck drivers *not entitled to immunity* where, although on duty at the time of traffic accidents, there was no showing (or even assertion) that driving outside a laned roadway, speeding, or failing to yield were necessary to their job duties (delivering the mail)), *State v. Cisneros*, 947 F.2d 1135 (4th Cir. 1991) (truck driver *not entitled to immunity* where, although on duty at the time of traffic accident, there was no showing (or assertion) that driving a truck with defective brakes was necessary to his job duties (driving in a convoy)), *State v. Ivory*, 906 F.2d 999 (4th Cir. 1990) (truck driver *not entitled to immunity* where, although on duty at the time of traffic accident, there was no showing (or assertion) that entering an intersection with the mistaken belief that he had the right of way was necessary to his job duties (driving in a convoy)), *and Morgan v. California*, 743 F.2d 728, 733-34 (9th Cir. 1984) (even though agents were on duty at the time of the incident, removal to federal court was improper absent a showing that "it would be necessary and proper for [the agent] to drive while under the influence in order to carry out his federal duty" or that "use of force [was necessary in connection with] a minor traffic incident"), *with Texas v. Kleinert*, 855 F.3d 305 (5th Cir. 2017) (*immunity appropriate* where federal task force agent's firearm accidentally discharged while struggling with a suspected fleeing felon), *Wyoming v. Livingston*, 443 F.3d 1211 (10th Cir. 2006) (federal agent in charge of wolf reintroduction program *entitled to immunity* for trespassing and littering after entering private property in the course of tranquilizing and installing collar monitoring devices on wolves),

prevail, he need only show "that he had an honest and reasonable belief that what he did was necessary in the performance of his duty." *Clifton*, 549 F.2d at 729 (citation omitted).

The Fourth Circuit's cases are consistent with that unifying theme. However, unlike the Ninth Circuit, the Fourth Circuit ostensibly requires a showing of some "exigency" to qualify for Supremacy Clause immunity. *See Cisneros*, 947 F.2d 1135. But the State misconstrues what suffices in the Fourth Circuit to make that showing. In the Fourth Circuit, immunity is appropriate when an accident results "from an exigency or emergency related to [a federal employee's] federal duties which dictated or constrained the way in which [the federal officer] was required to, or could, carry out those duties." *Id*. at 1139.

Examples of the types of "exigency" that would support an immunity defense in the Fourth Circuit include "the necessity to exceed a speed limit in order to capture a fleeing felon, or to execute a raid, or the necessity to use a known defective vehicle to complete emergency snow clearing." *Id.* The court distinguished those examples from instances in which a federal employee believed he could safely violate the traffic laws but could not point to "an 'exigency

---

*Tanella*, 374 F.3d 141 (DEA agent *entitled to immunity* where he believed his life was in danger when he shot and killed suspected drug dealer), *Clifton*, 549 F.2d 722 (*immunity appropriate* where agent executing arrest warrant shot and killed fleeing suspect based on mistaken belief that suspect had shot another agent and was a danger to others), *California v. Dotson*, No. 12-cr-0917-AJB, 2012 WL 1904467 (S.D. Cal. May 25, 2012) (*immunity appropriate* where agent was involved in a fatal accident after passing through a stop sign at 78 miles per hour, without police lights or sirens, in an "effort to catch up with the suspect and the rest of his team"), and *In re: McShane*, 235 F. Supp. 262 (N.D. Miss. 1964) (*immunity appropriate* for federal official who ordered teargas to be fired into a crowd to quell a campus riot).

stemming from the duties of military service or federal employment.'" *Id.* at 1140 (citing *Ivory*, 906 F.2d at 1001-03). In other words, while the Fourth Circuit recognized that "snow clearing" may be enough to provide the necessary "exigency," it distinguished between activities undertaken to carry out some specific official duty ("the duties of military service or federal employment") and those involving normal daily driving that happens to occur while the federal agent is on duty.

This accident was inarguably the direct result of an exigency related to Agent Landis' official duties; he reasonably believed that he needed to regain his place in the carefully planned group of law enforcement vehicles attempting to maintain covert surveillance of a dangerous drug trafficker. This is precisely the type of enforcement action in which agents are permitted to use their judgment to violate traffic laws. *See* Ex. 2, 6124.5(D) (DEA policy on Official Government Vehicles). Even if the Court were to stray from the longstanding confines of the Ninth Circuit's immunity standard by adopting the Fourth Circuit's exigency requirement, Agent Landis' actions fall squarely within that requirement.

This case is nothing like *Cisneros*. There, despite Cisneros' claims that his actions were necessary and proper, he never offered any reason why his duties made it reasonable or necessary for him to run through the stop light. 947 F.2d at 1138-40. Instead, he claimed his brakes failed and that the failure of those brakes constituted an "exigency." *Id.* at 1140. The Fourth Circuit rejected this argument, finding the brake failure—even if it constituted an exigency—went to the "scienter" element of the state offenses, but did not "inhere[] in the very

nature and object of the federal duty at issue." *Id.* In other words, nothing about the job function that Cisneros was performing (driving in a convoy) even arguably required him to be driving without brakes. Importantly, the Fourth Circuit made clear that had Cisneros' supervisors known the brakes were defective but determined that "vital federal interests required that the truck should nevertheless be used to transport military personnel," then, it "would have [been] a different case." *Id.*

Here, the defense is indisputably based on Agent Landis' efforts to perform his federal duties. While engaged in covert surveillance, he made the reasonable decision, based on his extensive training and experience, to violate the traffic laws to regain his position among his team. As the grand jury testimony makes clear, every officer involved in the mission that day has made that same decision while performing surveillance. Surveillance, like the kind Agent Landis was performing that day, requires occasionally violating traffic laws, when necessary; otherwise, law enforcement would "be completely ineffective." Ex. 3, p. 51 (Otte testimony).

The critical distinction in cases involving officers in on-duty traffic accidents who are entitled to immunity and those who are not is whether their specific duties at the time required more than just standard driving. This accident did not occur because Agent Landis was trying to get to the office more quickly to start his normal workday. Rather, it arose in the context of ongoing surveillance of a fentanyl dealer, an important and potentially dangerous law enforcement activity. And while this might not have been a situation that required lights and sirens, it was reasonable for this highly trained and experienced agent to conclude that it required

more than just standard driving. *See generally* Ex. 3 at 67-69 (Hoagland testimony) (noting that all cars involved in surveillance—not merely those closest to the subject—may need to speed, even when not using lights and sirens); *id.* at 72-73 (McCarley testimony) (speeding during surveillance is sometimes necessary even in situations not requiring "lights and siren[s]"). Even if Fourth Circuit law applied here, this is precisely the type of exigency that would support immunity.

The only question for the Court is whether, under the circumstances as he knew them at the time, Agent Landis had an honest and reasonable belief that what he did was necessary to the performance of his duties. Reasonableness does not require universal agreement that Agent Landis made the right call in that tense, rapidly evolving situation. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). Rather, Agent Landis loses the cloak of immunity only if **no reasonable officer** would have made the same decision. *New York v. Tanella,* 281 F. Supp. 2d 606, 624 (E.D.N.Y. 2003), *aff'd*, 374 F.3d 141 (2d Cir. 2004) (rejecting argument that agent acted unreasonably because court "simply [could not] find that under the circumstances as they existed at the time, 'no reasonable officer would have made a similar choice'") (citing *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir. 1995)); *see also Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (when judging the reasonableness of an officer's actions, allowance must be made for the "tense, uncertain, and rapidly evolving" circumstances in which he found himself); *Spencer v. Pew*, 117 F.4th 1130, 1140 (9th Cir. 2024) (same).

The State has not—and cannot—show that no reasonable officer would have made the same decision that Agent Landis made. To the contrary, the grand jury testimony makes clear that officers and agents make those same types of decisions every day when involved in surveillance; violating traffic laws is often required to conduct effective surveillance, and Agent Landis reasonably concluded that was the case here.

**II.     The Reasonableness of Agent Landis' Belief Must Be Judged by What He Knew at the Time, and Not by the Outcome of His Actions.**

While acknowledging that DEA policy *allows* agents to violate traffic laws during enforcement actions, the State repeatedly argues that Agent Landis nevertheless violated that policy because it provides that such laws may not be violated to the public's detriment. (State's Resp. at 3, 6.) To the extent the State means to suggest that the undeniably tragic *result* of this incident should be considered when determining the reasonableness of Agent Landis' beliefs, that proposition should be quickly rejected. It is axiomatic that the reasonableness of an agent's decision "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (excessive force case); *see also Clifton,* 549 F.2d at 727 n.9 ("It is the existence of reasonable grounds for the belief formed *at the time* and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct." (emphasis added)).

# CONCLUSION

What ultimately happened here was a tragedy, but that outcome does not inform the question of the reasonableness of Agent Landis' belief that what he did was necessary to the performance of his duties. This Court should decline the State's invitation to go beyond the bounds of established Ninth Circuit law by second-guessing the difficult decisions Agent Landis made during a tense and rapidly evolving situation. Agent Landis is immune from the State's charges. This case must be dismissed.

DATED this 6th day of November 2024

Respectfully submitted,

*s/ David H. Angeli*
**ANGELI LAW GROUP LLC**
DAVID H. ANGELI, OSB No. 020244
MICHELLE KERIN, OSB No. 965278
AMY E. POTTER, OSB No. 231794
AMANDA A. THIBEAULT, OSB No. 132913
*Attorneys for Defendant Samuel Troy Landis*